***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Donovan. Based upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. On July 2, 2002, the employee-employer relationship existed between the parties.
3. Defendant was a duly qualified self-insured, with Hewitt Coleman 
Associates acting as the third-party administrator.
4. Plaintiff's average weekly wage was $691.36, which yields a compensation rate of $460.93 per week.
5. On July 2, 2002, plaintiff sustained a low back injury by accident arising out of and in the course of his employment by defendant.
6. Plaintiff last worked for defendant on or about April 21, 2003.
7. The issues for determination are:
a. Whether plaintiff is entitled to disability benefits after April 20, 2003?
b. Whether plaintiff is entitled to medical compensation?
8. The parties stipulated the following documentary evidence:
a. Stipulated Exhibit #1: Industrial Commission Forms.
b. Stipulated Exhibit #2: Plaintiff's medical records.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 53 year old high school graduate.
2. Plaintiff began his employment with defendant's predecessors on March 24, 1969 as a doffer, a spinning machine operator and a scheduling clerk. In 1982, plaintiff was promoted to supervisor. Plaintiff continued as a shift supervisor after defendant purchased the company from CMI Industries.
3. In 1998, plaintiff developed back problems unrelated to his employment. In July 1999, plaintiff underwent a laminectomy and discectomy at L5-S1 performed by Dr. James R. Hirsch. Plaintiff returned to work in August 1999 and after a few weeks developed further low back pain and right leg pain. On December 2, 1999, Dr. Hirsch performed a lumbar fusion operation at L5-S1.
4. Plaintiff returned to work in January 2000 for four hours per day for two months, then returned to his regular duties as a second shift supervisor in April 2000. In Fall 2000, plaintiff was assigned to work as a third shift supervisor in the chenille department. Plaintiff's duties included standing and walking with occasional bending, pushing and pulling activities and lifting objects weighing up to 50 pounds.
5. Following plaintiff's return to work in 2000, he suffered minor low back pain and right leg pain resulting from his surgeries. He took Celebrex and walked after work to alleviate his symptoms. Plaintiff did not miss any work for back related problems and last received treatment from Dr. Hirsch in April 2001.
6. On June 18, 2002, a second shift machine operator, Rogelio Nolasco, approached plaintiff from behind and flexed his knees into the back of plaintiff's knees as a practical joke. Plaintiff's knees buckled and he felt a sharp pain in his lower back as a result. Plaintiff told Nolasco of his prior surgeries and admonished him not to repeat the actions. Plaintiff continued to work without lingering effects from the incident.
7. On July 2, 2002, Nolasco again approached plaintiff from behind at work and flexed his knees into the back of plaintiff's knees. As plaintiff's knees buckled, he jerked and twisted his lower back. Plaintiff fell against a table and immediately experienced severe low back pain and loss of feeling in his legs. Following this incident, plaintiff attempted to work for approximately one hour but was unable to continue due to continuing severe low back pain. Plaintiff reported the incident to Mr. Johnny Gentry who completed an accident report.
8. Plaintiff returned to work from July 8, 2002 through July 11 but was unable to continue and did not return on July 12, 2002. On July 17, 2002, plaintiff presented to Dr. Hirsch with complaints of low back pain. Dr. Hirsch's examination revealed decreased range of motion of the back in all directions. He diagnosed plaintiff with significant lumbar spasm and prescribed Celebrex, a steroid dose pack, Flexeril and Vicodin. He ordered an MRI and wrote plaintiff out of work "for an undetermined period of time." Plaintiff was paid his full salary during the time he was out of work.
9. On July 29, 2002, Dr. Hirsch reviewed the MRI and noted a mild central disc bulge at 4-5 without stenosis and no compression of the nerve root and no disc herniation. He also noted no abnormal motion between flexion extension and good position of the titanium cages surrounding the fusion, but he opined that due to the titanium, an MRI is not the best method to determine the solidity of a fusion. Accordingly, Dr. Hirsch ordered a follow-up CT scan and continued plaintiff out of work through August 13, 2002.
10. On August 13, 2002, Dr. Hirsch interpreted the CT to show a solid fusion at L5-S1. He attributed plaintiff's symptoms to "trauma producing a lumbar strain and spasms" which were improving over time. Dr. Hirsch recommended that plaintiff return to work at half days, then to full time, with a 20 pound lifting restriction for three weeks.
11. Plaintiff returned to work on August 27, 2002 as a third shift supervisor. He continued to suffer low back pain and plaintiff delegated many of his duties to others.
12. From September 2002 into March 2003, plaintiff continued to be employed as a third shift supervisor; however, his job performance consisted primarily of sitting to lessen his continuing back pain. Plaintiff did not take his medication while at work because it interfered with his ability to think clearly.
13. On October 9, 2002, plaintiff discussed his condition with defendant's Human Resources Director, Gary Sebastian. As a result, Mr. Sebastian wrote a memorandum, relieving plaintiff of some of the physical duties of his position.
14. On March 3, 2003, plaintiff returned to Dr. Hirsch complaining of slowly worsening back pain, which increased with sitting or standing. Dr. Hirsch prescribed medication.
15. In March of 2003, defendant closed the third shift chenille operation and moved plaintiff to the first shift.
16. In April of 2003, plant manager John Gentry and personnel director Gary Sebastian informed plaintiff that he was being terminated due to "economic conditions." Defendant offered plaintiff a new position of Quality Assurance Technician. Mr. Sebastian reported to plaintiff that the job would require walking, standing, bending and lifting 10-15 pounds. At the hearing before the Deputy Commissioner, the plaintiff testified that he refused this position because the job would require him to walk, bend and stand beyond short periods of time and it would have been too painful for him to perform this job.
17. On April 23, 2003, plaintiff returned to Dr. Hirsch with severe back pain worsening with any activity. Dr. Hirsch ordered a discogram at L3-4, L4-5 and L5-S1. Dr. Hirsch opined that due to plaintiff's severe back pain worsening with any activity that plaintiff should not work at all.
18. The discogram was performed on May 9, 2003. Dr. Hirsch noted that there was no concordant pain and it appeared that the fusion at L5-S1 was good. Due to plaintiff's continuing symptoms, he recommended a myelogram. The myelogram was performed on May 30, 2003 and did not demonstrate a failed fusion. The test did show some spurring near the disc space where the fusion was and Dr. Hirsch opined that this might be causing some of the problems plaintiff was having with movement. He further noted that despite the lack of evidence in the tests of a failed fusion, he could not rule that out without surgical exploration. Dr. Hirsch recommended the exploratory surgery and plaintiff chose to wait before making his decision.
19. Dr. Hirsch opined that the incident of July 2, 2002 significantly aggravated plaintiff's pre-existing, non-disabling lower back condition that the incident was a significant causal factor in plaintiff's development of moderate to severe low back pain, and that treatment by pain specialists would constitute reasonable medical treatment.
20. On September 10, 2003, defendant sent plaintiff to Dr. O. Dell Curling for an evaluation. Plaintiff presented with complaints of near constant discomfort in the lumbosacral region, greater on the left than the right. He reported increased symptomology with prolonged sitting or standing and with bending. Dr. Curling noted that the examination was valid and there was no evidence of symptom magnification behavior. He diagnosed plaintiff with "mechanical back pain of unclear etiology, though likely related to multifactorial postoperative and degenerative changes in the lower lumbar spine." Dr. Curling further opined that plaintiff had signs and symptoms "that would be consistent with a post compressive injury to the left S1 root." He did not agree with the idea of surgical exploration as recommended by Dr. Hirsch, but opined that plaintiff would receive equal or greater benefit from pain management at a potentially lower risk.
21. Dr. Curling opined that plaintiff was not at maximum medical improvement and that he would potentially benefit from additional medication trials. He further opined that following several weeks of medication trials, plaintiff would potentially be capable of modified work in a light capacity with appropriate modifications, including frequent changes in position and no repetitive bending or twisting.
22. Plaintiff has determined that he would rather proceed with a course of non-invasive pain management instead of surgery.
23. The Full Commission finds the plaintiff's testimony regarding his current symptomology and inability to perform duties due to continuing low back pain is credible.
24. The Full Commission finds that defendant's job offer to plaintiff in April of 2003 as a Quality Assurance Technician was not suitable employment for the plaintiff as it required him to walk, stand and bend for periods of time which would have worsened plaintiff's back pain. Dr. Hirsch ultimately determined that plaintiff should not work at all. The plaintiff justifiably refused the position of Quality Assurance Technician.
25. On July 2, 2002, plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant, which significantly aggravated his pre-existing low back condition.
26. The plaintiff would benefit from treatment by pain management specialists.
27. Plaintiff's average weekly wage was $691.36, which yields a compensation rate of $460.93 per week.
28. Plaintiff is not entitled to have defendants pay for the plaintiff's attorney's fee for defending this matter on appeal to the Full Commission.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment and as a direst result of the work assigned on July 2, 2002, which significantly aggravated his pre-existing low back condition. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff did not unjustifiably refuse suitable employment such that his benefits should be suspended. N.C. Gen. Stat. § 97-32.
3. As a result of plaintiff's compensable injury, he is entitled to temporary total disability compensation at the rate of $460.93 per week for the period from April 21, 2003, continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred, including treatment by pain management specialists, as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. Dr. Hirsch is hereby approved to be plaintiff's primary treating physician for his back, and Dr. Hirsch may refer plaintiff to pain management specialists, as he deems appropriate. N.C. Gen. Stat. § 97-2(19).
5. Plaintiff is not entitled to have defendants pay for the plaintiff's attorney's fee for defending this matter on appeal to the Full Commission pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $460.93 per week for the period from April 21, 2003 and continuing until further order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. Plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred, including treatment by pain management specialists, as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. Dr. Hirsch is hereby approved to be plaintiff's primary treating physician for his back, and Dr. Hirsch may refer plaintiff to pain management specialists, as he deems appropriate.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved for plaintiff's counsel. Defendant shall pay one fourth of the accrued award in a lump sum directly to plaintiff's counsel and thereafter every fourth check shall be paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
This the ___ day of February 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER